The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. We have three cases that are scheduled for oral argument this morning. The first case is Qualcomm Incorporated v. Apple Incorporated. Attorney Sweezy, you reserve four minutes of time for rebuttal. Is that correct? Yes, it is, your honor. Okay. You may begin, please. Thank you. Good morning and may it please the court. There were two grounds in this IPR and on each ground there was a critical issue, yet for each ground the board improperly sidestepped that critical issue. For the first ground the board erred in construing a key term and for the second ground the board erred in refashioning that ground in a manner not raised by the petition. I'd like to address both of these legal errors this morning and I'll start with the board's error in not construing a key term. This is Judge Toronto. Can I just ask you, why does it matter if the board didn't adopt its own construction if, as I think it did, it said that even under your construction the SATO art teaches the element at issue? Haven't we said repeatedly that claim constructions that are not material, not outcome determinative, issues simply needn't be resolved? Yes, Your Honor. I agree with the principle of this court that not every case requires a claim construction, but that wasn't the situation here and I'd like to explain. The board itself recognized that this was a pivotal issue and it was a material issue for this first ground. And Your Honor mentioned whether the board had actually applied our construction. The board did not apply either side's construction. It never says in its final written decision that it's going to go through an analysis under either side's construction. We recognize that when the board or the district court does that, that is one way to sidestep an issue, but here the board did not apply either side's construction. And I would specifically point out that while there was a dispute between the parties on the full meaning of the term, both sides agreed that the clock signal requires synchronization. Our definition came in full from the IEEE dictionary and the patent itself, but Apple removed the word periodic. But regardless, both sides were in agreement that synchronization was required. And in the board's patentability analysis, and the court can find this at Appendix 15 through 25, there is no finding, much less any analysis, as to whether the FATO reference actually discloses or renders obvious synchronization. The only mention there is the board recognizing that our construction requires synchronization, but there's no further analysis or findings of synchronization in the and make a showing that under your construction, FATO does not meet the elements. I took it that on FATO, you just have an argument about the failure to adopt a construction, and you don't have an argument that the board did not have substantial evidence for FATO meeting the elements. I think, Your Honor, it's all bundled up with this threshold failure of the board to give the term a meaning. Under the standard two-step process for evaluating a challenge to a patent, you first have to understand what the scope is of the claims that are being challenged. And that was critical here because clock signal, as the board recognized, as AAPL recognized at the oral hearing, that this ground was dependent on the claim construction issue. This was the only disputed term in the IPR. And in order for both the board to reach a finding of unpatentability and for this court to meaningfully review it, we first have to understand what the scope of the term means. That comes... Counselor, this is Judge Rado. You're using the synchronization. Are you arguing that it must be periodic, that the clock signal must be periodic? Yes, Your Honor. Our construction does follow the standard definition of terms, the well-understood meaning, that is based on a very reliable source in this art, the IEEE Dictionary. Yeah, I see that. It's got it in the IEEE Dictionary, the definition that you're advancing. But show me where in the specification is periodic, disclosed. It isn't, Your Honor. And the reason is not uncommon. Why would we rely on a definition outside of the specification? I mean, it's... You want us to drag extrinsic evidence into the specification, and it's just not there. I don't see your support for periodic or synchronization. I don't see anything in the intrinsic record that supports that or compels you to go outside and seek support via extrinsic evidence. I have two responses to that, Your Honor. On the face of the patent and requiring a clock signal, inherently within that meaning of clock is a periodic timing event, that the clock is controlling things at a certain rate or speed, not some sort of external user or event or ad hoc basis. But under the ordinary meaning of clock, the patent didn't need to go on and specify what that meaning is. This court's precedent is clear that patents do not have to restate a standard definition, doesn't have to bog down the specification with terms that are well understood in the art. And the IEEE Dictionary is one of the best evidence of what is well understood in this art. In fact... But doesn't the dictionary, doesn't it list clock signal, clock pulse, and timing pulse as synonyms? It does, Your Honor. And notably absent from that is the term that is used in the SATO reference of timing signal. So two points... Well, if that's the case, if they're synonyms, then why did the board... Explain the argument that the board erred when it concluded that timing signal in SATO encompassed the clock signal in the patent. If they're synonyms, then how did the board err? Let me give you three responses. First, Your Honor, SATO doesn't disclose clock signal. So it brings us back to the initial point that we need to understand what the scope of clock signal is. The second is that while the IEEE Dictionary does include additional terms in clock signal, it doesn't disclose timing signal. And the third point there is what I think effectively the board did, and this court has been clear that the patentability analysis is not something that should amount to a word search. And frankly, this sort of reminds me of a kid's telephone game. When you start with one term, clock signal, and the board said, all right, that's similar to clock pulse, which the IEEE Dictionary exposes, and then that's similar to timing pulse, and then it got to timing signal. But just like in the kid's telephone game, what you end up with is not what you started with. You don't come full circle. So it still leaves us open with the question of what does clock signal mean, and does SATO's discussion of timing signal actually disclose or render obvious the clock signal term? This court precedent in- Ms. Swissy, this is Judge Toronto. You've focused up until now on the board's discussion of timing signal in SATO, but you haven't, I think, referred yet to SATO's disclosure of a clocked static type address decoder, which I took to be the basis for the board saying it doesn't really matter whether there's a difference between clock signal and timing signal because SATO discloses a clock, which is the basis for your own construction. And so under your construction, the element is found in SATO. Yes, Your Honor. Let me address that because as best we can read the decision, that's what the board was relying on for purportedly finding this issue moot. But again, it still leaves the predicate question of what does clock signal mean. Notably, the clock static address decoder that is discussed in SATO is not the term clock signal. Second, the board discusses that with no supporting evidence. It simply block quotes those portions of SATO while it does that a few times in its decision at 10, 17, 18, and 22. It's simply quoting from SATO, but there's no discussion, no analysis, and under APA obligations, the board needs to tell us why it finds some equivalence between those two terms. It doesn't provide support for that. Counsel, this is Judge Stoltz. So here we've got something where the patent itself says, refers to a clock static decoders, and there's different quotes that are put in the board's decision. You think the board needed to interpret that? I mean, it's... Yes. It doesn't seem all that clear to me. What do you think they needed to say? The board needed to say what clock signal means. That's the predicate question under cases... Hang on. Hang on. I want to ask you something. Why didn't they say what it means at page A9? I mean, Apple's brief suggests that, in fact, the board did construe this term and rejected your argument requiring periodic timing at page A9 and even later on at page A18. Why do you think the board... What is your response to that position? A couple of responses, Your Honor. First, the board tells us that it is not construing the term. At appendix 10, it expressly says it determines not to construe the term clock signal. So we have to take the board at its word at that. I'm sorry, Your Honor. I did want to continue responding to your question, but I didn't want to interrupt you. Go ahead. I didn't say anything. Go ahead. Okay. I'm sorry. If I may continue... Yes. You may continue. Thank you. The second point is that Apple itself, throughout its brief... I think you mentioned an assertion in Apple's brief. Repeatedly, starting from the statement of its issues, Apple recognizes that the board did not construe the term. And we're really left with a decision that we can't really evaluate or test the viability of the board's patentability analysis because we don't know what clock signal means. Again, this was the only construction in dispute. It was critical to this first ground. And the board... What about the prior report that it could either be in A or it could be in B? And under either of those constructions, we conclude that the prior teaches this claim element. That is one... Is the board allowed to do that? Say A or B. And under either one, it teaches the claim element. Yes, Your Honor. We accept that principle, but that is not what happened here. And the board decision cannot be read that way because both sides did agree that synchronization was required. And the board never addressed whether SATO actually discloses synchronization. Okay. Counselor, you're into your rebuttal time. I think you may want to reserve it. I'll give you back all your rebuttal time, but let's hear from the other side now. Thank you, Your Honor. I didn't reach the second ground. I'd be happy to, but I understand I'm out of time for the court. I tell you, go ahead and reach the second ground and take no more than a couple of minutes to do that. Sure, Your Honor. On the second ground, I think this can be addressed quite clearly by looking at Apple's petition. Apple's petition presented a combination of two references, ASANO and ETO, and specifically used the ETO reference for one of the limitations on the first and second logics. The board's decision, as Apple conceived, rested only on ASANO alone. It departed from the ground in the petition. And under SAS Institute and this court's case law under SAS, it is important to follow the AIA restrictions on the board that it is not injecting itself and crafting its own theories, but needs to follow the arguments that are in the petition. From the start of the petition and its enumeration of ground two, Apple repeatedly calls the ground ASANO in view of ETO. Its only arguments are relying on ASANO for this limitation, and the board should not have departed and injected its own ground. And we would ask the court to remand in order for the board to the IPR and not its separate deviation from Apple's theories. Okay. Thank you. I think we have that. Let's hear from Counselor Degna, please. May I please report, Lauren Degna for Apple. Let's start with the state of ground. The board found the claims obvious over Qualcomm's construction. Because that finding is supported by substantial evidence, this court should affirm. I would say, Your Honor, just trying to, you're quite right, it, the construction that, because the board found STATO rendered the claims obvious under Qualcomm's construction, that's as much as it had to do. On the issue of the board's- Ms. Sweezy's answer, I think, at least the thing that's sticking in my mind, is that there remains an omission in the board's discussion, if we were thinking of the board's discussion as applying to STATO Qualcomm's construction, because the board never found STATO to teach that the signal was synchronous. Yes, Your Honor. And respectfully, I think that's simply not the case. I think you were quite right. We searched the briefs. Qualcomm has not made a substantial evidence challenge to the board's finding that STATO's discussion of a clock static type address decoder, and the fact that its invention, including the decoder of figure three, would be used in such a system, that finding has not been challenged for substantial evidence. And in fact, there is ample, more than substantial evidence to support the board's finding. So this notion of there's no mention in the brief, there's nothing in the appellate record, and the board's finding is factual in nature. And I would say, in terms of what that evidence is, Your Honor, the board read the reference, and it talks about a clock signal. And then the board looked at the dictionary that Qualcomm analyzed. It looked at that evidence, and it also looked at the declaration that was put in by Apple's expert, Dr. Hurst, that explains how the system, how one of skill and the art would understand STATO's combined teachings. All of those, all that evidence, the patent, the declaration, and the dictionary, is substantial evidence supporting the board's finding. And the board did more than enough analysis under the APA for this court to discern its reasoning and see how it reached its conclusion that STATO meets the clock limitation. And the second argument, if I may, Your Honors, focuses on this idea that we really shouldn't believe STATO when it says that it can work in a clock system. And the board correctly discounted the argument that Qualcomm cannot negate STATO's explicit disclosure by characterizing STATO's disclosure as mere opinion. We are entitled, unless, excuse me, unless a reference is shown not to be enabled. We are entitled to take STATO at its word. And the board properly reviewed that reference through the lens of a factual finder and determined that STATO's explicit, specific implementation instruction to use its system, its decoders, in operating with a clock signal. And that was a finding of fact that was supported by… Just, am I understanding things right that the patent that's in front of us is the one that uses the two-word phrase clock signal. STATO uses the two-word phrase timing signal and then the, I don't know, four or five-word phrase clocks something decoder. But that STATO never uses the phrase clock signal. Is that right? That is right, Your Honor. And I think that is ultimately immaterial in that the board, as part of its fact-finding mission, is allowed to interpret these references. And so it doesn't have to find a word-for-word match. But interpreting the references, it determines the disclosure. Are those terms synonyms under the IEEE dictionary? Yes, yes, they are, Your Honor. And the board found that they are at least equivalent. And the dictionary itself says that, although those same exact words are not used, right? But the board, based on the dictionary's disclosure, finds that they're equivalent and we agree that they are synonyms. And under the broadest reasonable interpretation, a BRI standard, you know, strike that. We don't need to get into that. But I would agree with you, Your Honor, that they are synonyms. Okay. Any other questions? Can I just ask, do you have anything to say about the second ground, the Asano ground? Your Honor, so the first thing I will say about the second ground is this Court does not need to reach it because... Right. What's the next thing you have to say? Yeah, of course. So with respect to Asano, you know, the petition, so let's just set the stage on this, Your Honor, and I don't want to rush it. The petition did, in fact, rely on Asano to disclose the first and second logic. It also, there's no question, it is advanced in obviousness theory. But its obviousness theory relied both on Asano for the first and second logic and on Ito. And the petition, as well as the declaration submitted with that petition, goes through and interprets Asano, not only figure two, but the words surrounding the description of figure two, and describes what one of ordinary skill in the art would understand Asano to teach. And that was in the petition, and it also was in the declaration. Apple came back to it in the reply. The board relied on what was in the petition. In fact, Qualcomm disputed vigorously that Asano disclosed the first and second logic, which takes a certain number of bits and outputs wordlight-enabled signals, and the second logic taking a certain number of bits and outputting these things. Qualcomm specifically disputed that Asano had that teaching. The board evaluated Qualcomm's arguments, and then the board rejected them. It's really unclear how we have an APA violation here, notice of opportunity. Not only was Qualcomm put on notice, it made arguments. Perhaps at most it's saying, we wish we had said more. But it certainly had the opportunity to say as much as it wanted to on this point. And so we have to look at this second ground, this APA through the lens of notice and opportunity. And this is a far cry from the cases that counsel referenced, and even the M&K Holdings case from earlier this week from this court. It's a far cry from that. The petition set the scope of the grounds. The board ultimately found obviousness, and it found a motivation to come up with. M&K, in contrast, a brief deviation into that case, the board had found anticipation. It was a completely different theory. The independent claim had two completely different options in its independent claim, A and B, so to speak. The claim at issue, Claim 3, was specifically targeted to one of the options, B, and the entire theory was based on the fact that the primary reference didn't have the B option, so they went to another reference. The board switched gears entirely and said, we don't care about the B option. You can still kill this claim for A. That is the kind of notice and opportunity issue that requires a remand, but when the board stays within the boundaries of the petition as it did here, we don't have an APA violation. There's no need for a remand. And with that, if there are no further questions, I can stop the balance of my time. Okay. No, we thank you. Let's go back and hear from Counselor Sweeney, please. You have four minutes. Thank you, Your Honor. I'll start with the state of the ground and touch on at least three points briefly. The first point is that under this court's precedent, it is clear that we need to have first a claim construction to even meaningfully assess the board's decision. That is why the substantial evidence standard doesn't come into play yet, because we don't really have any meaningful way to test whether the board found something in the prior art or not, because it hasn't first construed the term. And under this court's decisions in Gector and CSR v. Skolkandy, those are directly on point. In both of those cases, the board found a term either in or not in the prior art, but without first construing the claim. And this court said that was error, that threshold failure to construe a material claim that was in dispute by the parties was a threshold legal error. So it's necessarily bound up with the board's patentability findings. The second point I would like to make is that the board did not reject either side's construction or embrace either side's construction. It explicitly said it was not construing the term. So both periodic and synchronization were... Counselor, why was it necessary for the board to construe the term if there's no controversy? Didn't we say under Vivid that terms need to be construed only to the extent that it's required to resolve a controversy? Yes, Your Honor, and there was a controversy here. As Apple said at the hearing, this issue was the pivotal issue, and yet it's sidestepped. It did not conduct a dual analysis under both constructions. It did not give a construction. It simply looked at clock signal and found a similar word in SADO, Clock Static Address Decoder, without any analysis, and then discarded that portion of SADO because the remainder of the board's patentability analysis is on timing signal, which it did not equate with clock signal. We are really left with an incomplete and unsupported decision, and under Gector and CSR versus Skullcandy, Homeless Housewares, the board first needs to adopt a construction in order to actually carry out its obligations on a patentability analysis, and both periodic and synchronization were at issue in the party reply brief at page 7. And then briefly on the second ground, I want to reinforce that we are presenting both a failure of notice and opportunity, but more importantly, this court's precedent is clearer than their SAS Institute and its progeny. The petition is what sets the scope of the IPR proceedings and is the architect of the case. The case that my opposing counsel described was exactly the scenario in that the board departed from the combination that Apple asserted. It did not offer alternative grounds. It offered only a SANO and DUA veto. We're all familiar with petitions that offer a third ground that Apple could have done. It was Apple's strategic choice not even to offer a SANO only in the alternative. And so for both of these legal errors, including the claim construction failure at the outset in the first ground, and the failure to apply the enumerated ground, we would ask the court to reverse the board's decision and remand for further proceedings. First, specifically to conduct claim construction, and second, to evaluate the ground presented in Apple's petition. Thank you for the additional time. Okay, we thank you for your argument. We thank parties for the argument in this particular case.